# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MERAL DEMIRAY, | ) |
| Plaintiff-Relator, | ) |
| v. | ) Case No. 22-cv-6591 |
| SURGE HOLDINGS, INC., a/k/a SURGEPAYS, INC., | ) |
| Defendant. | ) Jury Trial Demanded |

NOW COMES Plaintiff Meral Demiray ("Plaintiff"), by and through her undersigned attorneys, and, for her Complaint against Defendant Surge Holdings, Inc., a/k/a SurgePays, Inc. ("SurgePays"), states as follows:

**JURISDICTION AND VENUE**

1. This action arises under the federal False Claims Act, 31 U.S.C. §§3729-33 and the Illinois Whistleblower Act, 740 ILCS 174/20. Accordingly, this Court has jurisdiction over the federal claim pursuant to 28 U.S.C. §1331 and 31 U.S.C. §§3732(a) and supplemental jurisdiction over the Illinois state law claim pursuant to 28 U.S.C. § 1367.

2. Venue lies in this judicial district pursuant to 31 U.S.C. §§3732(a), because SurgePays qualifies to do business in the State of Illinois and transacts substantial business in the State of Illinois. Furthermore, SurgePays committed within this district acts proscribed by 31 U.S.C. §§3730(h), to wit: SurgePays unlawfully retaliated against Plaintiff because of lawful actions undertaken by Plaintiff in efforts to stop violations of the FCA.

**PARTIES**

3. Plaintiff is a resident of Roselle, Illinois.

4. SurgePays is a technology and telecommunications company focused on the underserved and underbanked communities that is doing business in Illinois.

## THE FALSE CLAIMS ACT

5. The federal False Claims Act (the "FCA"), 31 U.S.C. §§ 3729, *et seq.,* imposes liability on any person who: knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval (§ 3729(a)(1)(A)); or knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim (§ 3729(a)(1)(B)).

## FACTUAL ALLEGATIONS

6. On February 8, 2021, Plaintiff began working as an accounting manager for SurgePays. At the time of her termination, she was earning a base salary of $93,500 and approximately a $10,000 per year bonus.

7. In April of 2022, Plaintiff received a performance review which concluded with an immediate 10% raise and another promise from SurgePays to increase her salary another 10% on September 1, 2022 and possibly 10% more on January 1, 2023.

8. Thus, by all accounts, Plaintiff was performing superbly in her position in the fall of 2022.

9. But things changed early September 2022. Specifically, on September 2, 2022, Plaintiff placed a phone call to her supervisor Chief Financial Officer Anthony G. Evers ("Mr. Evers"). Mr. Evers was in Tennessee with Chief Executive Officer Brian Cox ("Mr. Cox"). Plaintiff called Mr. Evers to report odd accounts payable information she had discovered between SurgePays and Galaxy Distribution LLC ("Galaxy").

10. By way of background, SurgePays is involved in the federal Affordable Connectivity

Program ("ACP"), and as a participant in the ACP, supplies tablets and data usage to underprivileged Americans. Amongst other subcontractors, SurgePays contracts with Galaxy to 1) distribute computer tablets, purchased by SurgePays with ACP funds from suppliers like Quality One ("Q1"), and 2) sign-up and arrange activation of data to these underprivileged Americans, with data usage SurgePays obtains through contracts with companies like 321 Communications. For each tablet Galaxy distributed to an individual, and then activated, SurgePays would pay Galaxy a $45 commission which would typically amount to approximately $202,500 per week in commissions. SurgePays would also earn a commission on these transactions and would be paid under the ACP by submitting invoicing to the Universal Service Administrative Company ("USAC") which is under the umbrella of the Federal Communications Commission ("FCC").

11. On her September 2, 2022 phone call with Mr. Evers, Plaintiff pointed out that Galaxy was now submitting additional invoices for actual tablets and data services as opposed to simply initiation service. Plaintiff inquired with Mr. Evers as to the clear inconsistencies and Mr. Evers simply replied, **"don't worry about it, I will take care of it."** Plaintiff remarked that because of her concerns about the propriety of the invoices, that they would constitute false claims under the FCA, she would not pay any of them. Plaintiff was concerned that false billing to the federal government was taking place in SurgePays' ACP program involvement. Mr. Evers instructed Plaintiff to continue to pay these invoices as per usual. Again, Plaintiff refused.

12. Contributing to her concerns, this conversation was approximately a week after Mr. Cox sent Mr. Evers and Plaintiff an email directing them not to send any more payment wires to Galaxy on its preexisting account as the account was in the process of being changed.

13. Even more alarming, in approximately mid-August, Plaintiff overheard Mr. Evers says

3

to Mr. David C. Ansani (HR and Legal)("Mr. Ansani"), as he entered Mr. Ansani's office, **"I am not going to jail for this."**

14. Remarkably, on September 12, 2022, just **10 days** after her call with Mr. Evers, two weeks after Mr. Cox's email and less than a month after Plaintiff heard Mr. Evers exclaim, **"I am not going to jail for this,"** Mr. Evers fired Plaintiff purportedly for poor attendance and other alleged issues. This was despite the fact that Plaintiff received a glowing review back in April of 2022 and was awarded with not one, but two and potentially three pay raises for performance. The facts will clearly establish that Plaintiff's termination was not for attendance or any other issue; but that it was retaliation for Plaintiff attempting to stop FCA violations and also refusing to engage in the acts that were FCA violations.

## COUNT I
### False Claims Act: Retaliation (Termination)
### 31 U.S.C. §3730(h)(1)

15. Plaintiff re-alleges and incorporates by reference the allegations previously alleged herein.

16. Plaintiff related to her superiors her concerns about the propriety of certain invoices, that they would constitute false claims under the FCA, and that she would not pay any of them. Plaintiff was concerned that false billing to the federal government was taking place in SurgePays' ACP program involvement. Her supervisor, Mr. Evers, instructed Plaintiff to continue to pay these invoices as per usual. Again, Plaintiff refused.

17. Following those complaints, SurgePays retaliated against Plaintiff by terminating her employment on September 12, 2022.

WHEREFORE, Plaintiff Prays that this Court,

A. Enter judgment in favor of Plaintiff and against SurgePays for violation of 31 U.S.C.

§ 3730(h);

B. Award Plaintiff (2) times her back pay plus interest;

C. Award Plaintiff any and all special damages;

D. Award Plaintiff her attorneys' fees and litigation costs, and

E. Grant Plaintiff such other and further relief as the Court deems equitable and just.

## COUNT II
### Illinois Whistleblower Act Retaliatory Discharge 740 ILCS 174/1 et seq.

18. Plaintiff re-alleges and incorporates by reference the allegations previously alleged herein.

19. Plaintiff refused to engage SurgePays' scheme to violate the federal False Claims Act by paying invoices that potentially violated the FCA.

20. Her supervisor, Mr. Evers demanded that Plaintiff pay these invoices and she refused multiple times.

21. As a result of Plaintiff's refusals, she was subjected to retaliation by way of termination by SurgePays.

22. Such conduct was in violation of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq*.

23. SurgePays' stated purpose for Plaintiff's termination was instead a pretext for terminating Plaintiff's employment with SurgePays in retaliation for refusing to engage in SurgePays' scheme to violated the FCA.

24. Through SurgePays' actions in violation of the IWA, 740 ILCS 174/1 *et seq.*, Plaintiff has suffered damages including, but not limited to, loss of her job and income, loss of career opportunities, emotional distress and humiliation.

WHEREFORE, Plaintiff prays that this Court:

A. Enter judgment in favor of Plaintiff and against SurgePays for violation of the Illinois Whistleblower Act;

B. Award Plaintiff compensatory damages, including, but not limited to, lost pay and future salary, supplemental compensation and benefits, in such amount as will reasonably compensate her for her losses, and damages for emotional distress;

C. Award Plaintiff her attorneys' fees and costs, and non-taxable expenses pursuant to the Illinois Whistleblower Act, 740 ILCS 174/30;

D. Award Plaintiff prejudgment and post judgment interest at the appropriate rate on all benefits and damages that are awarded, and

E. Grant Plaintiff such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues herein.

    Respectfully submitted,
    MERAL DEMIRAY

    By: /s/ Michael A. Faccenda
     One of Her Attorneys

Michael A. Faccenda
Faccenda Law Group LLC
901 West Hillgrove Avenue
La Grange, IL 60525
Tel: (708) 497-3077
maf@faccendalawgroup.com
ARDC # 623931